IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | CASE NO. 20-mj-1704 |
| JON FREY, : | **FILED UNDER SEAL** |
| a/k/a "victorbravo9922" | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The United States of America, by and through William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, and J. Jeanette Kang, Assistant United States Attorney for the District, hereby moves this Honorable Court to detain the defendant prior to trial. On or about February 23, 2020, the defendant distributed child pornography to a chat group in a chat group in which chat participants trade child pornography. Law enforcement agents executed a search warrant on the defendant's house on August 6, 2020, and seized the defendant's mobile phone. A subsequent review of the phone's contents revealed that the defendant engaged in extensive chats with other like-minded child sex offenders via an online messenger ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The defendant has been under investigation by the Philadelphia Department of Human Services ("DHS") since the date of the search warrant execution. Because of the nature of the sexual abuse and child pornography allegations, DHS directed both the defendant and his wife to cease all contact by the defendant with ▮▮▮▮▮▮▮▮▮▮▮ during the investigation. However, the investigation has now revealed that the defendant defied that directive by engaging

in video and phone chatting with ▮▮▮▮▮▮ *every day* (in fact, multiple times per day) in flagrant disregard of DHS's prohibition on contact.

The defendant has been charged by Complaint with distribution and attempted distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), and faces a mandatory minimum sentence of 5 years' imprisonment and a statutory maximum of 20 years' imprisonment. He also faces an additional charge of accessing child pornography with intent to view. The preliminary calculation of his Sentencing Guidelines range for these charges is 188-235 months. The distribution charge also carries with it a statutory presumption that no condition or combination of conditions will assure the safety of the community or the defendant's appearance. *See* 18 U.S.C. § 3142(e)(3)(E).

Significantly, Pretrial Services has recommended that the defendant be detained, finding both that the defendant poses a significant risk of danger to the community and that there are no conditions that can reasonably assure the safety of the community. The Government agrees with this recommendation, and for these reasons set forth below, requests that the defendant be detained prior to trial.

I.  **FACTS**

In support of this motion, the government makes the following representations and proposed findings of fact:

    A.    **Probable Cause and Evidence**

There is probable cause to believe, based on the Complaint and warrant signed by the Honorable David Strawbridge on October 16, 2020, that the defendant has committed the offense of distribution and attempted distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). As a result, there is a rebuttable presumption, pursuant to 18 U.S.C. § 3142(e)(3)(E),

that no condition or combination of conditions will assure the safety of the community and the defendant's appearance in court.

The evidence in this case is strong. On February 23, 2020, a Kik[1] mobile application user with the username "victorbravo9922" distributed a sexually explicit video of a young child to the members of a Kik group in which its users shared child pornography. The video depicted a prepubescent girl, who appeared approximately 5-8 years in age, performing oral sex on a male. An undercover law enforcement officer was a member of this chat group, and observed "victorbravo9922" share this video. Kik provided Internet Protocol ("IP") logs for that account to law enforcement. Agents learned that an IP address that was used to log into the "victorbravo9922" account traced back to subscriber Jon Frey (the defendant) at 3049 Almond Street in Philadelphia, Pennsylvania.

On August 6, 2020, law enforcement agents executed a search warrant on the defendant's house. During the execution of the search warrant, the defendant confessed to agents that he used mobile applications such as Kik to engage in chats with other users about the sexual exploitation of children, and viewed images of young children.[2] He also admitted that he has copied sexually explicit files from Kik chat groups and shared them in other chat groups in order to stay "active" in these groups.

During search warrant execution, agents seized the defendant's mobile device. The defendant's phone had the Kik application installed and connected to another account name

---

[1] Kik is a free mobile application designed for chatting or messaging through an account and username created by the user. It allows users to share images and videos. It also allows users to join multi-user group chats.

[2] It is also a violation of federal law to knowingly access any child pornography with the intent to view. *See* 18 U.S.C. § 2252(a)(4)(B).

"vicbravo69." A review of the Kik application on the defendant's phone revealed that he had numerous chats with other individuals about sexually abusing ▬▬▬▬▬▬▬ For instance, on July 25, 2020, the defendant told an individual with Kik username "shelbiix.x":

> vicbravo69: ▬▬▬▬
> …
> vicbravo69: ▬▬▬▬
> shelbiix.x: ▬▬▬▬
> vicbravo69: ▬▬▬▬
> …
> vicbravo69: What do you think?
> shelbiix.x: Im open to an open family once my kids know what it is
> shelbiix.x: If they want to do stuff then sure I will help them
> vicbravo69: Including sex with an adult male? What age would you let a man attempt penetration?
> …
> shelbiix.x: My kids don't understand anything anout sex
> shelbiix.x: About
> vicbravo69: Yet. You need to teach
> vicbravo69: ▬▬▬▬
> shelbiix.x: Really
> vicbravo69: Yes
> shelbiix.x: What you just started licking her
> vicbravo69: I got her into it early
> vicbravo69: Yes
> shelbiix.x: ▬▬▬▬
> vicbravo69: During diaper changes
> vicbravo69: No
> vicbravo69: She didn't know
> shelbiix.x: Ahh
> vicbravo69: She didn't know I'm a pedo
> …
> vicbravo69: ▬▬▬▬
> shelbiix.x: Wow
> vicbravo69: I'm serious
> shelbiix.x: I believe you
> …
> vicbravo69: Have you ever been with a guy that is into these things like you are?
> shelbiix.x: No
> vicbravo69: No to which question? Sorry I asked too many at once
> shelbiix.x: Lol an open family no I haven't met anyone
> vicbravo69: Ok.

vicbravo69: I'd love to explore it with you at some point. Maybe before your baby is born
vicbravo69: Like to talk and just go from there.
shelbiix.x: Ok
vicbravo69: I'll be back in Pennsylvania next week. I'm not sure what your schedule is like but I'd love to keep talking, exchange numbers and maybe we can plan a date or something.

On July 15, 2020, the defendant messaged Kik user "PurpleQueenOfHearts," stating "▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" and "I'm strongly sexually attracted to girls 5-13." On that same day, he told Kik user "dunro555": "I've read that 7/8 is the recommended age for first intercourse possible In a medical journal … When I was in college I would spend hours in the library reading about sexual deviants and incest, child molestation … I'm obsessed." Then, on August 3, 2020, the defendant messaged Kik user "AriaMia128," stating "I've done things with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ … Just oral at first." The defendant also told "AriaMia128": "I've been a pedophile for as long I can remember … ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." "AriaMia128" then asked if the defendant has had sex with other kids, and he responded: "2." The forensic review did not identify any data pre-dating mid-July 2020, even though records from the defendant's mobile provider indicate he has had the phone for at least a year, indicating that we do not know the full extent of the defendant's online conduct.

After the search warrant execution, the defendant agreed to and underwent a polygraph examination. The defendant was asked if he, as an adult, had sexual contact with a child, and he responded "no." The polygraph examiner determined that there was deception indicated in the defendant's response. In other words, the defendant failed his polygraph examination.

Law enforcement agents also discovered over 200 cache files of images and videos, that, based on review by an FBI agent, depicted child pornography and demonstrated that the

defendant had accessed each of those more than 200 files.[3] Most of these cached files were found to be files stored on Mega.[4] The defendant's phone also contained evidence that he had accessed approximately 11 weblinks to files on the Mega application. These were found in the device's web history between July 30, 2020 and August 4, 2020. Files from these weblinks were obtained from Mega and searched pursuant to a federal search warrant, and were also found to contain hundreds of child pornography videos.[5]

**B.    DHS Investigation**

Just after the August 6, 2020 federal search warrant execution, DHS opened an investigation 

---

[3] Cached filed are files that are stored on a device after the user accesses an application or website; cache files allow the device to function faster the next time it opens that particular application or website by loading the cache files from the device rather than having to communicate with the application or website to retrieve the files.

[4] Mega is a cloud storage and file hosting service based in New Zealand. Mega files can be uploaded, downloaded and accessed through web browsers and mobile applications; it can be accessed from traditional computers along with smart phones and tablets. Users can sign up for free and are provided cloud storage space to save files. Files or folders can be shared with other individuals by creating a "link" (*i.e.*, a hyperlink) to the file or folder.

[5] An FBI agent reviewed the contents of these files from the Mega links accessed by the defendant, and determined that hundreds of video files in these links depicted child pornography. For instance, one video depicted two boys who appeared approximately 5-8 years old taking off their underwear, exposing their genitals, then having penetrative intercourse. Another video depicted an adult playing with a little girl's vagina; the girl appeared approximately 2-4 years old. Another video depicted an adult male with his erect penis exposed, then having vaginal penetrative intercourse with a young girl who appeared approximately 6-9 years old. The defendant also stated in a Kik chat on July 14, 2020 that he is interested in "little girls f***ing," and these Mega links demonstrate that the defendant saw exactly what he wanted to see.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

**C.** **Defendant Information**

Prior to his arrest, the defendant lived with his wife, ████████████████

████████. The defendant is the owner of Richmond Tech and Telecom, a computer technology services company. He is also an IT consultant.

The defendant owns two homes in Philadelphia, 3049 Almond Street (where he was living with his wife ████████ prior to the federal search warrant execution) and 3069 Salmon Street (where he has been staying after the search warrant execution). 3069 Salmon Street is about five blocks away from 3049 Almond Street, and is also within blocks of a playground and multiple schools including a preschool, an elementary school, a high school and parochial schools. The defendant has no criminal history.

**D.** **Maximum Penalties and Sentencing Guidelines**

If convicted of the one count of distributing and attempting to distribute child pornography under 18 U.S.C. § 2252(a)(2), as detailed in the Complaint, the defendant faces a mandatory minimum of 5 years' incarceration, a maximum of 20 years' incarceration, 5 years up to a lifetime of supervised release, a $250,000 fine, a $100 special assessment, mandatory restitution pursuant to 18 U.S.C. § 2259, and if found to be non-indigent, an additional, mandatory $5,000 assessment pursuant to 18 U.S.C. § 3014. At indictment, the defendant faces additional counts of accessing child pornography with intent to view, in violation of 18 U.S.C. § 2252(a)(4)(B). On these charges, the defendant's Sentencing Guidelines range is preliminarily

calculated to be 188-235 months.

## II.  ARGUMENT

There is a rebuttable presumption in favor of detention for individuals who, like this defendant, are charged with distribution and attempted distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2).  *See* 18 U.S.C. § 3142(e)(3)(E).  This presumption is based in part on the Congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes," *Comments of Chairman Lemar Smith*, H.R. Rep. 5422, and would pose a danger to the community if released.  *See also United States v. Farris*, 2008 WL 1944131, at *7 (W.D. Pa. 2008); *accord McKune v. Lile*, 536 U.S. 24, 33 (2002) (discussing sex offender recidivism); *Doe v. Bredesen*, 507 F.3d 998, 1006 (6th Cir. 2007) (similar).  Congress has emphatically expressed that child pornography offenses are insidious, dangerous and harmful, stressing that child pornography "is a form of sexual abuse" and "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years … the mere existence of and traffic in child pornographic images . . . presents a clear and present danger to all children," and "it inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials."  *United States v. MacEwan*, 445 F.3d 237, 250 (3d Cir. 2005) (internal citations and quotation marks omitted).

To overcome the statutory presumption in favor of detention, the defendant must present "credible evidence" that he will appear in this case as required and that he will not pose a risk of danger to the community upon release.  *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir.

1986). This Court may consider the defendant's propensity to commit crime generally, such as distributing or viewing more child pornography. *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) ("a defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute a sufficient risk of danger to come within the contemplation of the [Bail Reform] Act."). Under these circumstances, the defendant will be unable to rebut the presumption in favor of his detention.

    *First*, the nature and circumstances of the offense and other relevant conduct demonstrate that the defendant poses a significant danger to ▮▮▮▮▮▮▮▮ children in the community. The defendant distributed and viewed child pornography depicting young, pre-pubescent children, and made very clear that he has a sexual preference for children, even describing himself multiple times to other users as a "pedophile." There are numerous chat conversations found on the defendant's phone that describe, in excruciating detail, having sexual intercourse ▮▮▮▮▮▮▮▮ These chats are evidence of a real danger. At a minimum, he is fueling other child sex offenders' deviant sexual interests while doing the same for himself, and has no way of knowing what will happen after his conversations. But here, there is evidence that the defendant was taking steps to meet other users, as he told user "shelbiix.x" on Kik that he would love to "explore" an "open family" with her "at some point … before [her] baby is born." Then, he said they should plan a "date." These chats, coupled with the defendant's distribution and viewing of child pornography, paint a clear picture of the defendant's thoughts, desires and tendencies—and his willingness to venture out from behind his computer to further his sexual exploitation of children—are all things that this Court should consider in this determining that the defendant is a danger to the community. The

defendant should not be allowed to remain ▮▮▮▮▮

▮▮▮▮▮

Allowing the defendant to live in his second home at 3069 Salmon Street does not guarantee any additional safety. That house is a mere five blocks from the family home ▮▮ ▮▮▮▮. That house is also within blocks of schools, parks and a playground. Also, while location monitors can detect if the defendant leaves the home, ▮▮▮ ▮▮▮▮▮ There is no way to effectively monitor him, and nothing to deter him from having contact with children, as he has already demonstrated by his violation of DHS' directives.

*Second*, the defendant has already demonstrated that he cannot be trusted to abide by conditions of release. DHS told the defendant that he is not allowed to contact ▮▮▮ during their investigation, and the defendant refused to abide by that clear order. The defendant continued to communicate with ▮▮▮▮ through Facetime and on the phone, every day. They would talk in the morning, at lunchtime and in the evening. The defendant continued to communicate with ▮▮▮ even while knowing that both DHS and the FBI were investigating him. If an express order from DHS and two active investigations into his conduct were not enough to stop the defendant from contacting ▮▮▮ there can be no assurance that he will abide by any condition imposed by this Court.

*Third*, it is difficult to conceive of any form of supervision that would effectively and completely monitor the defendant's online access to child pornography, children and other sexual predators, especially in light of his knowledge of computers and the internet. There is no doubt that the defendant is especially knowledgeable when it comes to computers. The defendant's job is working with computers. He is the owner of a computer services company

and is an IT consultant. If he is released, the defendant will be able to access the internet through computers, cell phones, tablets and other such devices. There is no way to prevent him from secretly purchasing or using an Internet-accessible device without the knowledge of Pretrial Services. If this Court were to order that computer monitoring software be installed on the defendant's computer, there would be no way to detect if the defendant—who is clearly technologically savvy—were to subvert the computer monitoring software by simply inserting a device with its own operating system into the computer being monitored, thereby bypassing the monitoring software altogether. In that case, the defendant's activities would be completely undetectable.

There is also evidence that the defendant has attempted to conceal his conduct and avoid detection by using multiple chat applications. On a July 25, 2020 chat with Kik user "shelbiix.x," the defendant said: "Hey from whisper [a mobile chat application] … I feel safer chatting here on some stuff." When asked why, the defendant responded: "Idk more anonymous? Not all in the same spot?" He admitted to agents during the search warrant execution that he had deleted and reinstalled Kik a few weeks prior. Also, forensic review suggests that the defendant may have wiped, or reset, his phone—the forensic evidence discovered on his mobile device only dates back to mid-July 2020, though records from his phone provider indicate that he may have had the device for over a year. This is even more evidence that monitoring the defendant's device usage will be next to impossible.

Moreover, Pretrial Services is limited to inspection of items that are in plain view of the officers, and they are not permitted to seize electronic evidence. The defendant may obtain and possess child pornography on storage devices that may be impossible for Pretrial Services to locate. In *United States v. Schenberger*, 498 F.Supp.2d 738, 745 (D.N.J. 2007), a sister district

court in this Circuit recognized the limitations of internet monitoring: "This Court is not persuaded that meaningful assurances can be given that defendant's access to the internet can be stopped. Even if the defendant could somehow be prohibited from creating, viewing, or exchanging images of child pornography, it is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities." *See also United States v. Voelker*, 489 F.3d 139, 145 (3d Cir. 2007) (finding detention appropriate for a defendant charged with distributing and receiving child pornography, based on the dangers associated with child pornography offenses and the difficulty to effectively monitor understanding the accessibility of the internet). Additionally, while Pretrial Services ordinarily conducts monthly residence checks of pre-trial defendants released on electronic monitoring, in light of the current COVID-19 situation, the government understands that they are limiting their routine inspections, which further reduces any chance that the defendant can be effectively monitored in the community.

*Fourth*, the weight of the evidence against the defendant is strong and he faces substantial penalties. The child pornography video distributed on February 23, 2020 traces back to the defendant via IP log-in information. The defendant's phone contained evidence that he used nicknames that are a variant of "vicbravo," and the username used to distribute the child pornography in February was "victorbravo9922." Prison is a certainty for this defendant if he is convicted. On the distribution charge, he faces a mandatory minimum of 5 years and a maximum of 20 years. With the distribution and access charge, he faces a guidelines range of 188-235 months. The anticipation of this severe sentence gives him every incentive to flee, knowing that he will spend a significant portion of the rest of his life in jail. In addition, the

prospect of his lengthy prison sentence makes him even more of a danger to children in the community, knowing that his release on bail may be the last time he is ever free.

The defendant's argument that defendants charged with child pornography offenses are detained only where there is evidence of actual or attempted sexual contact with minors is unavailing. There is no such bright-line rule—the Court is not limited to looking for evidence of attempted sexual contact. The Court must consider the potential danger the defendant poses in any respect, including the danger that the defendant will commit another crime by, for instance, viewing more child pornography. However, even if this Court were to look for attempted sexual contact as the defendant suggests, such evidence exists here. As noted above, the defendant engaged in a Kik conversation with an individual about an "open family" (in which she allows or facilitates her children having sexual intercourse with others), then attempted to set up a "date" with this woman to "explore it with [her] at some point. Maybe before [her] baby is born."

*Fifth*, the defendant's ties to the community are not enough to reasonably assure the safety of the community. The defendant explains in his Motion for Release that he has "strong ties" to the community. These ties, however, were not enough to deter him from distributing or viewing child pornography. Indeed, even knowing that the defendant has been charged with this child pornography offense, the defendant's wife has requested that the defendant be able to come live at home ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This certainly indicates that a no-contact Order instituted by the Court (in addition to other conditions as required by the Adam Walsh Act) will not be enough to adequately assure the safety of the children in the community. Only a 24-hour watch by the Bureau of Prisons can ensure the safety of the community and children, in particular, from the defendant.

### III. CONCLUSION

For all of these reasons, the defendant cannot rebut the presumption under 18 U.S.C. § 3142(e)(3)(E) that no condition or combination of conditions will reasonably assure his presence for trial or the safety of the community.

WHEREFORE, the government respectfully requests the Court to detain this defendant prior to trial.

Respectfully submitted,

WILLIAM M. MCSWAIN
United States Attorney


*/s/ J. Jeanette Kang*
J. JEANETTE KANG
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CASE NO. 20-mj-1704** |
| **JON FREY,**<br>        a/k/a "victorbravo9922" | : | **FILED UNDER SEAL** |

**PRETRIAL DETENTION ORDER**

AND NOW, this _____ day of _____, 2020, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e) and (f)(1)(A).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) and (f)(1)(A) because:

(a) There is probable cause to believe, based on the complaint and warrant signed by the Honorable David Strawbridge on October 16, 2020, that the defendant has committed the offenses of distribution/attempted distribution of child pornography, in violation of 18 U.S.C. §

2252(a)(2). As a result, there is a rebuttable presumption, pursuant to 18 U.S.C. § 3142(e)(3)(E), that no condition or combination of conditions will assure the safety of the community and the defendant's appearance in court.

(b)　The evidence in this case is strong. On February 23, 2020, the defendant, using the username "victorbravo9922" a distributed sexually explicit video depicting a prepubescent girl engaging in oral intercourse with an adult male. Law enforcement agents traced "victorbravo9922" back to the defendant, and executed a search warrant on his home on August 6, 2020. During the search warrant execution, the defendant told law enforcement agents that has shared sexually explicit files on multiple occasions in order to stay "active" in chatrooms on Kik. A forensic review of the defendant's phone also uncovered evidence that the defendant accessed, with intent to view, child pornography.

(c)　If convicted of the count outlined in the Complaint, the defendant faces a mandatory minimum of 5 years' incarceration, a maximum of 20 years' incarceration, 5 years up to a lifetime of supervised release, a $250,000 fine, a $100 special assessment, mandatory restitution pursuant to 18 U.S.C. § 2259, and if found to be non-indigent, an additional, mandatory $5,000 assessment pursuant to 18 U.S.C. § 3014. At indictment, the defendant potentially faces additional charges related to accessing child pornography with intent to view.

(d)　If convicted, the defendant faces a significant sentence, having never previously served a prison sentence. This provides ample incentive to flee.

(e)　Prior to being taken into local custody on October 20, 2020, the defendant resided with his wife ███████████████████████████████████████████████.

(f)　The strength and nature of the case against the defendant, combined with the fact that the defendant will be incarcerated for a mandatory minimum term of imprisonment of 5

years, establishes the defendant's danger to the community and increases the high risk that the defendant will not appear as required by the Court.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HONORABLE HENRY S. PERKIN
United States Magistrate Court Judge

**CERTIFICATE OF SERVICE**

I certify that a copy of the Government's Motion for Pretrial Detention, and Proposed Order was served by email on the following defense counsel:

Greg Pagano
1315 Walnut St., 12th Flr.
Philadelphia, PA 19107
gpagano@paganolaw.net


*/s/ J. Jeanette Kang*
J. JEANETTE KANG
Assistant United States Attorney

Date: October 22, 2020